IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MOISES ANTONIO PARADA-HERNANDEZ and ANA PINEDA, § § § <br> Plaintiffs, § § <br> V. § <br> § <br> JOSHUA JOHNSON, Acting Field § <br> Office Director, ERO Dallas, ET AL., § § <br> Defendants. § | No. 3:25-cv-2729-K-BN |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from presiding District Judge Ed Kinkeade. *See* Dkt. No. 7.

Petitioner Moises Antonio Parada-Hernandez and Petitioner Ana Isabel Pineda Chica (collectively, "Petitioners") filed a Petition for Writ of Habeas Corpus on October 7, 2025 against five named government officials ("Respondents"). *See* Dkt. No. 1. On the same day, Petitioners filed an Emergency Motion for Temporary Restraining Order ("TRO"). *See* Dkt. No. 2.

Respondents filed a response. *See* Dkt. No. 10. And Petitioners replied. *See* Dkt. No. 12.

For the reasons discussed below, the Court should grant in part the Petition for Writ of Habeas Corpus [Dkt. No. 1] and deny the Motion for TRO [Dkt. No. 2].

## Background

Petitioner Pineda, a native and citizen of El Salvador, entered the United States on December 17, 2018 without an inspection. *See* Dkt. No. 1 at 9. Petitioner Parada-Hernandez, who is also a native and citizen of El Salvador, entered the United States on March 2, 2019 without an inspection. *See id.* Their son, who has cerebral palsy, entered the United States with Pineda. *See id.* Petitioners have another son who is a United States citizen. *See id.*

On December 21, 2018, Pineda was sent a Notice to Appear by the Department of Homeland Security ("DHS"). *See* Dkt. No. 1-3 at 44-45. And, on December 25, 2018, she was released on her recognizance. *See id.* at 49. She remains released under an "Alternatives to Detention" program. *Id.* at 50; *see* Dkt. No. 1 at 12.

Upon order, Pineda appeared at the Enforcement and Removal Office ("ERO") in Dallas, Texas on June 29, 2019; January 13, 2020; and March 2, 2020. *See* Dkt. No. 1 at 12. She is scheduled to appear again on April 14, 2026. *See id.*

On April 1, 2019, Parada-Hernandez was sent a Notice to Appear by the DHS. *See* Dkt. No. 1-3 at 16; Dkt. No. 11 at 6. And, on April 4, 2019, he was issued an Order of Release on Recognizance. *See* Dkt. No. 1 at 11; Dkt. No. 1-3 at 22.

Upon order, he appeared at the ERO in Dallas, Texas on May 8, 2019; January 7, 2020; October 5, 2022; October 7, 2024; and October 7, 2025. Dkt. No. 1 at 11.

During his appearance on October 7, 2025, Parada-Hernandez was arrested "on the basis that he is subject to mandatory detention under [the Immigration and

-2-

Nationality Act ("INA")] § 235 (8 U.S.C. § 1225)." Dkt. No. 10 at 9. He remains in physical custody. *See* Dkt. No. 1 at 10.

Petitioners filed a Petition for Writ of Habeas Corpus claiming that Petitioners were misclassified under 8 U.S.C § 1225, which authorizes mandatory detention, and that they should be classified under 8 U.S.C. § 1226. *See* Dkt. No. 1 at 14. They claim that Parada-Hernandez is unlawfully detained without bond under Section 1225. *See id.* at 12. And they claim that, when Pineda appears on April 14, 2026, she, too, will be arrested and detained without bond. *See id.*

Petitioners argue that failure to provide a bond hearing or individualized detention hearing violates Petitioners' procedural and substantive due process rights under the Fifth Amendment. *See id.* at 15-16. And they claim that their detention without an opportunity for bond under Section 1225, instead of Section 1226, violates the Administrative Procedure Act, 5 U.S.C. § 706 ("APA"). *See id.* at 16.

Petitioners ask the Court to (1) assume jurisdiction over the matter; (2) order that Petitioners not be transferred outside the Northern District of Texas; (3) issue a writ of habeas corpus and injunctive relief ordering Respondents to not alter Petitioners' custody status without further order; (4) issue a declaratory judgment that Petitioners should be held in custody pursuant to Section 1226 instead of Section 1225; (5) order Respondents to show cause that they have a lawful basis for invoking the automatic stay regulation; (6) grant attorneys' fees; and (7) grant any further relief the Court deems just and proper. *See id.* at 17.

Respondents do not challenge the Court's jurisdiction over this matter. They argue that Pineda's claim is not ripe because she is "not currently in immigration detention." Dkt. No. 10 at 9; *see id.* at 8. And they argue that Parada-Hernandez is not entitled to relief because (1) Petitioners have not exhausted administrative remedies; (2) an APA claim is not available to Petitioners; (3) Petitioners are properly classified under Section 1225; and (4) Petitioners are not entitled to relief under the Due Process Clause. *See generally id.*

The undersigned agrees that Petitioner Pineda's claim for relief is not ripe because she remains released on recognizance and is not in physical custody.

The undersigned addresses the arguments in the Petition [Dkt. No. 1] and the Motion for TRO [Dkt. No. 2] as to Petitioner Hernandez-Parada.

## Legal Standards and Analysis

### I. Exhaustion of Administrative Remedies

As a threshold matter, Respondents argue that the Court should deny Petitioners' claims because they have not exhausted their administrative remedies. *See* Dkt. No. 10 at 10. Respondents cite "the general rule that parties exhaust prescribed remedies before seeking relief from the federal courts." *Id.*

But, as Respondents note, "the [INA] does not mandate exhaustion for situations other than appeals for final orders of removal." *Id.*; *see also Lopez-Arevelo v. Ripa*, __ F. Supp. 3d __, No. EP-25-cv-337-KC, 2025 WL 2691828, at *6 (W.D. Tex. Sept. 22, 2025) ("Under the INA exhaustion of administrative remedies is only

-4-

required by Congress for appeals on final orders of removal." (quoting *Garza-Garcia v. Moore*, 539 F. Supp. 2d 899, 904 (S.D. Tex. 2007))); *see also* 8 U.S.C. § 1252(d)(1) ("A court may review a final order of removal only if – the alien has exhausted all administrative remedies available to the alien as of right.").

Respondents contend that Parada-Hernandez "has not yet attempted to obtain bond from an [immigration judge ("IJ")], and so any request at this time to order a bond hearing via a writ of habeas corpus is premature, at best." *Id.*

But they also point out that the Board of Immigration Appeals ("BIA") "affirmed 'the Immigration Judge's determination that he did not have authority over [a] bond request'" by a noncitizen who has resided in the United States for more than two years (which describes Petitioners). Dkt. No. 10 at 15 (quoting *In re Yajure Hurtado*, 29 I&N Dec. 216, 220 (BIA 2025)). And, so, Respondents argue that Petitioners must first use the very remedies that, according to Respondents, the BIA has deemed unavailable to Petitioners.

Requiring Parada-Hernandez to request a bond hearing before an IJ and (if bond were denied) appeal the decision before filing his habeas petition "would be inappropriate because it would exacerbate his alleged constitutional injury – detention without a bond hearing." *Lopez-Arevelo*, 2025 WL 2691828, at *6 (citing *Petgrave v. Aleman*, 529 F. Supp. 3d 665, 672 n.14 (S.D. Tex. 2021)); *see also Chiliquinga Yumbillo v. Stamper*, No. 2:25-cv-479-SDN, 2025 WL 2783642, at *3 (D. Me. Sept. 30, 2025) (finding that requiring petitioner to exhaust administrative

remedies by appearing before an IJ would not serve the purposes of the common-law exhaustion doctrine because petitioner could suffer irreparable harm).

And, so, the undersigned finds that Parada-Hernandez is not required to seek a bond hearing before an IJ or exhaust other administrative remedies and that the Court may properly consider his claims.

### II.   APA Claim

Petitioners argue that "[t]he BIA's decision in [*Yajure*] *Hurtado* is unlawful because it violates the Administrative Procedure Act, including because the BIA's decision is arbitrary, capricious, and contrary to law." Dkt. No. 1 at 16. And, so, they argue that detaining Petitioners without a bond hearing pursuant to *Yajure Hurtado* also violates the APA. *See id.*; 29 I&N Dec. 216.

Respondents contend that Petitioners' APA claim is barred because the APA "is available only for final agency action 'for which there is no other adequate remedy in a court.'" Dkt. No. 10 at 11 (quoting 5 U.S.C. § 704).

The undersigned agrees.

"Assuming without finding that APA claims are cognizable under habeas, when review of an agency action is sought under the general review provisions of the APA, the 'agency action' in question must be 'final agency action.'" *Santiago v. Noem*, No. EP-25-cv-361-KC, 2025 WL 2792588, at *6 (W.D. Tex. Oct. 2, 2025) (cleaned up; quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990) (quoting, in turn, 5 U.S.C. § 704)). Without a final agency action, federal courts lack subject matter

jurisdiction. *See Qureshi v. Holder*, 663 F.3d 778, 781 (5th Cir. 2011).

"Agency action must meet two conditions to be final: (1) the action must mark the 'consummation' of the agency's decisionmaking process' and (2) the action must be one by which 'rights or obligations have been determined,' or from which legal consequences will flow." *Patterson v. Def. POW/MIA Acct. Agency*, 343 F. Supp. 3d 637, 651 (W.D. Tex. 2018) (cleaned up; quoting *Am. Airlines, Inc. v. Herman*, 176 F.3d 283, 287 (5th Cir. 1999) (quoting, in turn, *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997))).

Here, because Parada-Hernandez has not received a bond hearing, and because the BIA could (notwithstanding its recent decision) affirm or deny the imposition of bond, "further administrative relief is available," and his "detention is not the consummation of the agency's decision-making process." *Santiago*, 2025 WL 2792588, at *6 (cleaned up).

And, so, the Court does not have jurisdiction to consider whether Parada-Hernandez's detention without a bond hearing pursuant to *Yajure Hurtado* violates the APA, and the Court should not consider Petitioners' APA claim. *See id.* at *6 n.2 ("Because the Court lacks jurisdiction to review [the petitioner's] APA claim, the Court proceeds to her constitutional claims.").

### III. Procedural Due Process

#### A. Availability of Procedural Due Process Protections

Parada-Hernandez claims that Respondents violated his procedural due

-7-

process rights by misclassifying him under Section 1225 to deny him a bond hearing.

The undersigned finds that, even if Parada-Hernandez was properly classified under Section 1225, detaining him without a bond hearing violates his Fifth Amendment rights.

Respondents contend that the Petitioners' procedural due process rights have not been violated because a noncitizen detained without bond while awaiting a removability decision "has only those rights regarding admission that Congress has provided by statute." Dkt. No. 10 at 23 (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 104 (2020)). They argue that, because Section 1225 "says nothing 'whatsoever about bond hearings' … [n]o procedural due process claim is stated." *Id.* (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018)).

The undersigned agrees with the court in *Lopez-Arevelo* and other courts in the Fifth Circuit and finds that *Thuraissigiam* is distinguishable in this context. *See* 2025 WL 2691828 at *7-10; *see also Vieira v. De Anda-Ybarra*, __ F. Supp. 3d __, No. EP-25-cv-432-DB, 2025 WL 2937880, at *4-5 (W.D. Tex. Oct. 16, 2025); *Gonzales Martinez v. Noem*, No. EP-25-cv-430-KC, 2025 WL 2965859, at *4 (W.D. Tex. Oct. 21, 2025); *Santiago*, 2025 WL 2792588, at *7-10; *Hernandez-Fernandez v. Lyons*, No. 5:25-cv-773-JKP, 2025 WL 2976923, at *7-8 (W.D. Tex. Oct. 21, 2025).

In *Thuraissigiam*, "[t]he Court did not address whether noncitizens mandatorily detained under § 1225(b) have a constitutional due process right to challenge the fact or length of their detention, as [Petitioners do] here." *Lopez-Arevelo*,

2025 WL 2691828, at *8. Unlike in *Thuraissigiam*, where the petitioner challenged his deportability and the denial of his asylum admission, Parada-Hernandez challenges his detention. *See* 591 U.S. at 114-15.

In the context of detention under Sections 1225(b) and 1226(a), the Fifth Circuit has "expressly left open the constitutional due process question" for lower courts to consider. *See Lopez-Arevelo*, 2025 WL 2691828, at *8 (citing *Jennings*, 583 U.S. at 312).

The petitioner in *Thuraissigiam* was also stopped and detained "within twenty-five yards of the border" and was not released or permitted to reside in the United States. 591 U.S. at 114.

But Petitioners have been released on their own recognizance and permitted to reside in the United States since 2018 (Pineda) and 2019 (Parada-Hernandez). Dkt. No. 1 at 9; *see Lopez-Arevelo*, 2025 WL 2691828, at *9 (distinguishing *Thuraissigiam* because petitioner had resided in the United States for three years).

And, so, Parada-Hernandez is entitled to procedural protections under the Fifth Amendment's Due Process Clause. And the undersigned will consider his claim that his detention violates his due process rights.

### B. *Mathews* Balancing Test

"To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976)." *Martinez v. Noem*, No. 5:25-cv-1007-JKP, 2025 WL 2598379, at *2 (W.D. Tex.


Case 3:25-cv-02729-K-BN   Document 13   Filed 10/29/25   Page 10 of 18   PageID 250

Sept. 8, 2025) (cleaned up). The three factors to consider are (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335 (cleaned up).

"The essence of due process is the requirement that 'a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it." *Id.* at 348 (quoting *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S., at 171-172 (1976) (Frankfurter, J., concurring)).

### 1. Private Interest

"Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty [the Due Process] Clause protects." *Vieira*, 2025 WL 2937880, at *6 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 690(2001)). District courts have held that noncitizens who have been released from custody on their recognizance have a "liberty interest in remaining out of custody on bond." *Lopez-Arevelo*, 2025 WL 2691828, at *11 (collecting cases).

Petitioner Parada-Hernandez was released on his recognizance on April 4, 2019, *see* Dkt. No. 1 at 11, and Petitioner Pineda was released on her recognizance on December 25, 2018, *see id.* at 12. Upon their release, Petitioners acquired a


"cognizable interest in [their] freedom from detention that deserves great weight and gravity." *Vieira*, 2025 WL 2937880, at *6.

And, so, the first factor weighs in favor of Parada-Hernandez.

### 2. Risk of Erroneous Deprivation and Value of Additional Safeguards

As to the second factor, Parada-Hernandez is in custody. Without a bond hearing, he will likely remain in custody. And the risk of an arbitrary deprivation is greater given the BIA's new interpretation of Section 1225(b)(2). *See Vieira*, 2025 WL 2937880, at *7; *Lopez-Arevelo*, 2025 WL 2691828, at *11.

"[A]gency decisionmakers regularly 'conduct[] individualized custody determinations … consider[ing] flight risk and dangerousness.'" *Gonzales Martinez*, 2025 WL 2965859, at *4 (cleaned up). So a bond hearing would "give [Parada-Hernandez] the opportunity to be heard and receive a meaningful assessment of whether he is dangerous or likely to abscond." *Lopez-Arevelo*, 2025 WL 2691828, at *11.

And, so, a bond hearing would reduce the risk of an erroneous deprivation of Parada-Hernandez's liberty. And the second factor weighs in favor of Parada-Hernandez.

### 3. Government's Interest

Respondents argue that the government has the constitutional power to detain Parada-Hernandez without bond "for the limited purpose of removal proceedings and

determining his removability." Dkt. No. 10 at 22.

But they do not explain their interest in making those determinations while detaining Parada-Hernandez without bond.

Petitioners have no history of absconding. As instructed, Parada Hernandez appeared at the ERO four times from 2019 to present. *See* Dkt. No. 1 at 11. Pineda appeared three times between 2019 and 2020. *See* Dkt. No. 1 at 12.

And, in any event, the government's interest in ensuring that Parada-Hernandez appears for his removal proceedings "would be squarely addressed through a bond hearing." *Gonzalez Martinez*, 2025 WL 2965859, at *4.

And, so, the third factor weighs in favor of Parada-Hernandez.

Because all three *Mathews* factors support Parada-Hernandez, the undersigned finds that denying him a bond hearing under Section 1225(b)(2) deprives him of his procedural due process rights under the Fifth Amendment.

### IV.  Statutory Interpretation and Substantive Due Process

Because the denial of a bond hearing violates Parada-Hernandez's procedural due process rights, even assuming that he is subject to Section 1225, the undersigned will not address the parties' arguments on statutory interpretation. *See, e.g.*, *Perez v. Kramer*, No. 25-cv-3179, 2025 WL 2624387, at *3 (D. Neb. Sept. 11, 2025) (addressing procedural due process issue but declining to "determine the validity of the government's argument that [p]etitioner should be mandatorily detained under § 1225 [or] the applicability of the BIA's decision in [*Yajure*] *Hurtado*"); *Vieira*, 2025

WL 2937880, at *4 (addressing procedural due process violation "regardless of whether the applicable statute is § 1225(b) or § 1226(a)").

The undersigned also declines to address the substantive due process claims. *See Santiago*, 2025 WL 2792588, at *6 n.2 ("[B]ecause the Court grants [the petition] on procedural due process grounds, the Court need not reach [the petitioner's] substantive due process … claims.").

## V. Motion for TRO

As "[a] TRO is simply a highly accelerated and temporary form of preliminary injunctive relief," "[t]o obtain a temporary restraining order, an applicant must show entitlement to a preliminary injunction." *Horner v. Am. Airlines, Inc.*, No. 3:17-cv-665-D, 2017 WL 978100, at *1 (N.D. Tex. Mar. 13, 2017) (cleaned up).

But granting a preliminary injunction "is an extraordinary remedy which requires the movant to unequivocally show the need for its issuance." *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997) (citing *Allied Mktg. Grp., Inc. v. C.D.L. Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir. 1989))

And, so, to obtain preliminary injunctive relief, a movant must unequivocally "show (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) granting the preliminary injunction will not disserve the public interest." *Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 252-53

(5th Cir. 2009) (cleaned up); *accord Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974).

And the United States Court of Appeals for the Fifth Circuit "has repeatedly cautioned that [such relief] should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements." *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013) (cleaned up).

"The purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *Canal Auth.*, 489 F.2d at 576 (cleaned up).

So the decision on a motion seeking a TRO or preliminary injunction does "not amount to a ruling on the merits" of a plaintiff's claims, *Jonibach Mgmt. Trust v. Wartburg Enters., Inc.*, 750 F.3d 486, 491 (5th Cir. 2014), considering that "the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits" and "may be challenged at a later stage of the proceedings," *id.* (cleaned up).

In short, a TRO or preliminary injunction is not a device "to give a plaintiff the ultimate relief he seeks" through his claims. *Peters v. Davis*, No. 6:17CV595, 2018 WL 11463602, at 2 (E.D. Tex. Mar. 28, 2018); *accord Lindell v. United States*, 82 F.4th 614, 618 (8th Cir. 2023) ("This Court has repeatedly recognized that the purpose of injunctive relief is to preserve the status quo; it is not to give the movant the ultimate relief he seeks."); *Kane v. De Blasio*, 19 F.4th 152, 163 (2d Cir.

2021) ("The purpose of a preliminary injunction is not to award the movant the ultimate relief sought in the suit but is only to preserve the status quo by preventing during the pendency of the suit the occurrence of that irreparable sort of harm which the movant fears will occur." (cleaned up)). And, so, a motion or application for a TRO or preliminary injunction is properly denied when it is no more than a "motion to win."

Here, Petitioners do not specify the relief they seek in their TRO motion, *see* Dkt. No. 2, or supporting brief, *see* Dkt. No. 1-2. But the arguments supporting their motion focus on the harms of mandatory detention without bond. *See* Dkt. Nos. 2 & 1-2. And, so, they appear to seek the same or similar relief in their habeas petition and TRO motion.

Insofar as Petitioners seek the same ruling on the merits as the habeas petition, the undersigned finds that the TRO motion improperly seeks ultimate relief. *See Buenrostro-Mendez v. Bondi*, No. H-25-3726, 2025 WL 2886346, at *4 (S.D. Tex. Oct. 7, 2025) (denying TRO as moot because it sought the same relief as the petitioner's habeas petition – to release the petitioner from custody or order a bond hearing).

Parada-Hernandez also "requests 30-day notice of any intent to remove him out of this District." Dkt. No. 2 at 2.

He argues that the All Writs Act, 28 U.S.C. § 1651 ("AWA") authorizes the Court to prevent him from being transferred to another district. *See* Dkt. No. 1-2 at

17. He contends that, if he is transferred, "the government will argue that this Court will no longer have jurisdiction" to grant Parada-Hernandez a remedy. *Id.* at 17. And he argues that the AWA gives the Court the power to "prevent even a risk that a respondent's actions will diminish the court's capacity to adjudicate claims before it." *Id.* at 18.

But "a District Court [does] not lose its jurisdiction when a habeas corpus petitioner [is] removed from the district so long as an appropriate respondent with custody remain[s]." *Jones v. Cunningham*, 371 U.S. 236, 243 (1963). Here, at least one named Respondent will remain in the Court's jurisdiction, even if Parada-Hernandez is removed.

So Parada-Hernandez has not met his burden to show a threat of irreparable injury if he were moved to a detention facility outside of this district, with or without 30-days' notice.

And, so, the Court should deny the Motion for TRO [Dkt. No. 2].

## Remedy

Petitioners ask the Court to (1) assume jurisdiction over the matter; (2) order that Petitioners not be transferred outside the Northern District of Texas; (3) issue a writ of habeas corpus and injunctive relief ordering Respondents to not alter Petitioners' custody status without further order; (4) issue a declaratory judgment that Petitioners should be held in custody pursuant to 8 U.S.C. § 1226 instead of § 1225; (5) order Respondents to show cause that they have a lawful basis for invoking

the automatic stay regulation; (6) grant attorneys fees; and (7) grant any further relief the Court deems just and proper. *See* Dkt. No. 1 at 17.

But most courts confronting this issue have determined that the appropriate relief is a bond hearing. *See Lopez-Arevelo*, 2025 WL 2691828, at *12-13 (collecting cases); *Vieira*, 2025 WL 2937880, at *7 (collecting cases).

And, so, the Court should order that Petitioner Parada-Hernandez be given a bond hearing before an IJ and decline to award any other requested relief at this time.

## Recommendation

The Court should grant in part the Petition for Writ of Habeas Corpus [Dkt. No. 1] and require Respondents to provide Petitioner Parada-Hernandez with a bond hearing before an IJ. And the Court should deny the Motion for TRO [Dkt. No. 2].

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. ' 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judges' findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure

to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

      DATED: October 29, 2025

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE